**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| NATALIE SMITH,<br>*Plaintiff* | §<br>§<br>§ | |
| v. | §<br>§ | Case No.  SA-24-CV-01027-XR |
| XPANSIV DATA SYSTEMS, INC.,<br>*Defendant* | §<br>§<br>§<br>§ | |

## ORDER ON MOTION FOR SUMMARY JUDGMENT

Before the Court is Defendant's Motion for Summary Judgment (ECF No. 21). After careful consideration, the motion is **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND

This is an employment dispute. Plaintiff alleges that Defendant, her former employer, wrongfully terminated her. She brings claims of pregnancy and disability discrimination, retaliation, failure to accommodate, and harassment. Defendant claims it discharged Plaintiff for poor performance.

### I. Plaintiff's Hiring and Training Period

Plaintiff began her employment with Defendant in May 2023. ECF No. 21 at 8. She immediately underwent a 12-week training period. *Id.* at 3. Defendant claims that Plaintiff's immediate supervisor, Rebecca Teigen, "observed many performance issues" during this training period. *Id.* These included: (1) "[Plaintiff] did not take notes in a meeting"; (2) Plaintiff "claimed she could finish a project within two hours" but in fact admitted she needed help; (3) Plaintiff "mis-calendared a client kickoff" and was underprepared for a meeting; and (4) Plaintiff took a virtual meeting from her car. *Id.* at 3–4. Defendant also claims Plaintiff's performance issues included requiring assistance from coworkers during the training period. *Id.* at 21.

1

Plaintiff argues that Teigen did not provide any formal negative feedback to Plaintiff during this time and that Teigen told Plaintiff that her work was "beautiful" and she was doing an "awesome job." *Id.* ECF No. 23 at 8.

## II. August 10 Meeting and Pregnancy Disclosure

Plaintiff and Teigen met on August 10, 2023. ECF No. 21. "Teigen addressed continued issues with time management, notetaking, understanding [Defendant]'s business lines, and answering basic client questions." ECF No. 21 at 5. Plaintiff disclosed that she was pregnant. *Id.* Teigen congratulated Plaintiff and referred her to Defendant's maternal-leave policy. *Id.* Teigen also acknowledged that Plaintiff was at risk for developing high blood pressure and preeclampsia. *Id.*

## III. Performance Improvement Plan

Plaintiff claims that Teigen's "management style changed 'almost immediately' after the pregnancy announcement." ECF No. 23 at 9. Teigen began "closely scrutinizing minor details, including wording and formatting in emails." *Id.* Teigen began to document "performance issues" in Plaintiff's work. ECF No. 21 at 6. Specific incidents include:

(1) Plaintiff "discouraged a client from using" a company website;

(2) Plaintiff was "not productive" while Teigen was out from August 24 to 25;

(3) Plaintiff "could not explain key material" in "her first kickoff call" with a client, requiring Teigen to assist her;

(4) Plaintiff submitted two work assignments late;

(5) Plaintiff "confused a client" by "portraying" that a company website was difficult to use; and

2

(6) Plaintiff "drafted an inaccurate client email," requiring Teigen "to write the email herself."

ECF No. 21 at 6–7.

On August 31 and September 7, Teigen notified Plaintiff that Teigen "was not seeing improvement" and "was concerned" about Plaintiff's ability to "synthesize complex information." *Id.* at 7. Teigen claims that Plaintiff "was the only employee at her level requiring such extensive daily attention." *Id. at* 8. But Teigen also "coached [Plaintiff's peers] on their specific word choice in client emails and ability to synthesize information." ECF No. 21 at 19–20.

On September 15, 2023, Teigen put Plaintiff on a Performance Improvement Plan ("PIP"). ECF No. 21 at 9. Plaintiff was the only employee who received a PIP. ECF No. 23 at 9. The PIP required Plaintiff to markedly improve in three areas: "Account Management, Program Requirements and Regulations, and Organization and Prioritization." ECF No. 21 at 9.

Plaintiff noticed a job posting for her position "the day [of] or the week of or the week before" she received her PIP from Teigen. ECF No. 23-4 at 16. Defendant disputes that this posting was for Plaintiff's position, instead arguing that it added an additional personnel spot to Teigen's team. ECF No. 25 at 4.

On September 18, Plaintiff emailed Teigen and Teigen's supervisor, Elisha Moody. ECF No. 21 at 9. Plaintiff indicated that she disagreed with the PIP and noted that the PIP was only provided after she disclosed her pregnancy, suggesting an improper motive. *Id.* Moody investigated this concern. *Id.* She spoke to Teigen, "who denied saying anything negative about [Plaintiff's] pregnancy." *Id.* at 9–10. Moody decided that the PIP was warranted due to Plaintiff's "subpar" performance. *Id.* at 9.

**IV. Termination**

Teigen documented several instances in which Plaintiff "did not meet the PIP's goals." ECF No. 21 at 11. They include the following:

(1)     Plaintiff asked a colleague to lead a meeting and was unable to answer a client's "basic questions";

(2)     Plaintiff "sent internal information to clients" by mistake;

(3)     Plaintiff mistakenly told Teigen that she was waiting for a client to provide some information;

(4)     Plaintiff confused internal and client-facing information in a meeting; and

(5)     Plaintiff submitted her PIP progress report late several times.

ECF No. 21 at 12–13. Notably, Plaintiff was also given her "Final Training Panel" during this time. *Id.* at 12. She passed this "quiz on industry knowledge and [Defendant's] processes." *Id.* Plaintiff also "independently sent fifteen client emails" while on the PIP. *Id.*

Despite this, Teigen concluded that Plaintiff "had not improved on the key concepts of her role: synthesizing regulatory program information and requirements and communicating clearly internally and externally."  *Id*. Teigen recommended that Defendant terminate Plaintiff. *Id.* Defendant did so on October 13, 2023—two months after Plaintiff disclosed her pregnancy and one month after Defendant posted an opening for Plaintiff's position and placed Plaintiff on the PIP. *See id.*

Plaintiff filed this action in September 2024. She alleges several theories of discrimination, harassment, and retaliation in violation of the Texas Labor Code, Title VII of the Civil Rights Act, the Americans with Disabilities Act ("ADA"), and the Pregnancy Discrimination Act ("PDA"). Defendant now moves for summary judgment on all claims. ECF No. 21.

## LEGAL STANDARD

The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56. To establish that there is no genuine issue as to any material fact, the movant must either submit evidence that negates the existence of some material element of the non-moving party's claim or defense, or, if the crucial issue is one for which the nonmoving party will bear the burden of proof at trial, merely point out that the evidence in the record is insufficient to support an essential element of the nonmovant's claim or defense. *Little v. Liquid Air Corp.*, 952 F.2d 841, 847 (5th Cir. 1992), *on reh'g en* banc, 37 F.3d 1069 (5th Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

Once the movant carries its initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate. *See Fields v. City of S. Hous.*, 922 F.2d 1183, 1187 (5th Cir. 1991). Any "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment," *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Rather, the nonmovant must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). The Court will not assume "in the absence of any proof . . . that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075.

For a court to conclude that there are no genuine issues of material fact, the court must be satisfied that no reasonable trier of fact could have found for the nonmovant, or, in other words, that the evidence favoring the nonmovant is insufficient to enable a reasonable jury to return a verdict for the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In making this determination, the court should review all the evidence in the record, giving credence to the evidence favoring the nonmovant as well as the "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000). The Court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment, *id.* at 150, and must review all facts in the light most favorable to the nonmoving party. *First Colony Life Ins. Co. v. Sanford*, 555 F.3d 177, 181 (5th Cir. 2009).

## DISCUSSION

### I. Pregnancy Discrimination

Plaintiff alleges that Defendant violated the PDA, the Texas Labor Code, and Title VII by discriminating against her because she was pregnant. Defendant moves for summary judgment against these claims, arguing that Plaintiff cannot establish a prima facie case.

### A. Governing Law

Title VII prohibits an employer from discriminating against any individual with respect to employment because of such individual's sex. 42 U.S.C. § 2000e–2(a)(1). "The PDA amended Title VII to include discrimination based on pregnancy and related medical conditions . . . ." *Puente v. Ridge*, 324 F. App'x 423, 427 (5th Cir. 2009). "[F]or a pregnancy-based sex discrimination claim, an employer is liable for disparate treatment, which occurs when the employee's 'protected trait actually motivated' the employer to take the adverse employment action." *Fairchild v. All Am. Check Cashing, Inc.*, 815 F.3d 959, 966 (5th Cir. 2016).

Plaintiff lacks direct evidence to raise a reasonable inference that Defendant discriminated against her.[1] So she must prove her case with circumstantial evidence under the *McDonnell Douglas* burden-shifting framework. *Id.* (noting that a "claim brought under the PDA is analyzed like any other Title VII discrimination claim"); *see also Ross v. Judson Indep. Sch. Dist.*, 993 F.3d 315, 321 (5th Cir. 2021) (applying *McDonnell Douglas* to a discrimination claim under the Texas Labor Code).

Under this framework, Plaintiff must first make a prima facie showing of discrimination. *Ross v. Judson Indep. Sch. Dist.*, 993 F.3d 315, 321 (5th Cir. 2021). "[A]n individual plaintiff may establish a prima facie case by showing actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were based on a discriminatory criterion illegal under Title VII." *Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 228 (2015) (internal quotations omitted). This burden is "not onerous." *Id.* But it requires Plaintiff to show that "(1) she is a member of a protected class; (2) she was qualified for the position she sought; (3) she suffered an adverse employment action; and (4) others similarly situated but outside the protected class were treated more favorably." *Saketkoo v. Administrators of Tulane Educ. Fund*, 31 F.4th 990, 997–98 (5th Cir. 2022).

## B. Plaintiff Had Not Identified a Similarly Situated Person Treated More Favorably

Plaintiff fails to make a prima facie showing on this fourth and final element—that she points to "similarly situated" workers treated more favorably. Instead, she argues that there is no

---

[1] Plaintiff states that "[t]he statements made by Ms. Teigen . . . were direct evidence of discriminatory intent." ECF No. 23 at 12. She does not identify which statements she is referring to, but she cites a September 14, 2023, email in which Teigen asked Moody, "can we schedule a time to meet for additional coaching on [Plaintiff]? I need to understand the policy and procedure surrounding her situation with childcare and current pregnancy . . . ." ECF No. 23-3 at 3. This statement is not "evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." *Rodriguez v. Eli Lilly & Co.*, 820 F.3d 759, 765 (5th Cir. 2016).

"requirement that a plaintiff provide 'comparator' evidence." ECF No. 23 at 14. But the cases that she cites address the prima facie requirements of an ADA discrimination claim, not Title VII discrimination. *See, e.g.*, *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 696 (5th Cir. 2014). And later-decided Title VII cases clarify that "[t]he 'similarly situated' prong requires a Title VII claimant to identify at least one coworker outside of his protected class who was treated more favorably 'under nearly identical circumstances.'" *Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 426 (5th Cir. 2017); *see also Saketkoo*, 31 F.4th at 998 ("To satisfy the 'similarly situated' prong, the employee carries out a comparator analysis.").

Nowhere in Plaintiff's response to the motion does she identify a comparator, so she fails to carry her prima facie burden.

## II. Disability Discrimination

Defendant moves for summary judgment on Plaintiff's disability discrimination claims. It claims that Plaintiff "cannot establish a prima facie case of disability discrimination because she was not disabled." ECF No. 21 at 21. Plaintiff disagrees, arguing that her "high-risk pregnancy and symptoms" qualify her for coverage under the ADA. ECF No. 23 at 17.

The ADA prohibits "discriminat[ing] against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). The prima facie case requires a showing that Plaintiff has a disability or was regarded as disabled. *Caldwell v. KHOU-TV*, 850 F.3d 237, 241 (5th Cir. 2017).

Plaintiff's alleged disability was that she had a "risk of high blood pressure/preeclampsia." "Merely being at risk of developing a condition is insufficient to state a disability-discrimination claim under the ADA." *Chancey v. BASF*, No. 23-40032, 2023 WL 6598065, at *2 (5th Cir. Oct. 10, 2023). Summary judgment is appropriate on this claim.

8

**III. Failure to Accommodate**

Plaintiff advances failure-to-accommodate theories under the ADA and the Pregnant Workers Fairness Act ("PWFA").

**A. Failure to Accommodate Under the ADA**

"To prevail on a failure-to-accommodate claim, a plaintiff must show that (1) she is a qualified individual with a disability . . . ." *Mueck v. La Grange Acquisitions, L.P.*, 75 F.4th 469, 485 (5th Cir. 2023), *as revised* (Aug. 4, 2023) (cleaned up). As stated, Plaintiff cannot establish that she is disabled because of her high-risk pregnancy. *See* Chancey, 2023 WL 6598065, at *2.

**B. Failure to Accommodate Under the Pregnant Workers Fairness Act**

The PWFA protects all pregnant employees, not just those considered disabled under the ADA. *See* 42 U.S.C. § 2000gg-1. It generally requires that employers "make reasonable accommodations to the known limitations related to the pregnancy . . . or related medical conditions of a qualified employee." *Id.*

There is a fact issue of whether Defendant made such accommodations. Plaintiff "requested a delayed start time, frequent breaks[,] and the ability to leave her desk and walk around." *Id.* at 20. Defendant points to evidence indicating that Teigen approved these requests. *See* ECF No. 21 at 28 (citing Teigen deposition). But Plaintiff maintains that Teigen told her that she "was not allowed to leave her desk for her entire shift, with no exceptions." ECF No. 21-22 at 21. Similarly, there is evidence that Teigen allowed Plaintiff to start late, *see id.* at 20, as well as evidence to the contrary, *see id.* (noting that Teigen implemented a rule prohibiting late starts).

Summary judgment is inappropriate given these disputed facts.

**IV. Retaliation**

Plaintiff brings claims of retaliation under Title VII, the PDA, the ADA, and the Texas Labor Code. *See* ECF No. 6 at 3.

9

### A. Title VII, PDA, and Texas Labor Code Retaliation

The *McDonnell Douglas* framework applies to Title VII retaliation claims relying on circumstantial evidence. *Cooper v. Dallas Police Ass'n*, 278 F. App'x 318, 320 (5th Cir. 2008). Retaliation under the Texas Labor Code is analyzed in the same manner. *Carter v. Cal. Grill, LLC*, 538 F. Supp. 3d 714, 722 (W.D. Tex. 2021).

### 1. Plaintiff Establishes Her Prima Facie Case

Plaintiff meets the prima facie burden. A prima facie case has three elements: (1) the plaintiff engaged in a Title VII protected activity; (2) the employer took an adverse employment action against her; and (3) there is a causal connection between (1) and (2). *Id.* Here, Plaintiff engaged in a protected activity when she complained to HR Manager Elisha Moody that she received a PIP only after she disclosed her pregnancy, suggesting an improper motive. Defendant terminated her. And the temporal proximity between these two actions could suggest causation. *See Garcia v. Prof'l Contract Servs., Inc.*, 938 F.3d 236, 243 (5th Cir. 2019) (noting four months between protected activity and adverse action can carry the prima facie burden on causation).

Defendant argues that Plaintiff's failure to meet the conditions of her PIP was an intervening event that destroys the inference of causation necessary to establish a prima facie case. But this purported failure is the legitimate, non-retaliatory reason that Defendant relies on to rebut the prima facie case. So invoking it to argue that Plaintiff fails to meet her prima facie burden improperly collapses two distinct steps of the *McDonnell Douglas* analysis.

### 2. Defendant Rebuts the Prima Facie Case with Plaintiff's PIP Failure

Plaintiff's prima facie case shifts the burden to Defendant to rebut with a legitimate, non-retaliatory reason for terminating Plaintiff. Defendant does so by providing evidence that it terminated her because of poor performance.

### 3. There Is a Fact Issue Whether Defendant's Rationale Is Pretextual

Plaintiff raises a genuine dispute of whether Defendant's asserted reason is pretext for retaliation. Teigen provides much of the testimonial evidence that Plaintiff failed to meet performance standards. But Teigen began to suspect that Plaintiff would sue for pregnancy discrimination after she complained to Moody. ECF No. 23 at 23; ECF No. 23-4 at 73. A jury could find that Teigen then began documenting performance issues to build a record for the anticipated suit and relied on that record to terminate Plaintiff. Considering this along with the fact that (1) the record lacks performance issues prior to Plaintiff's pregnancy disclosure but outside her training period and (2) Plaintiff was terminated despite passing her final training panel, a jury could further find that Teigen did not merely document genuine performance problems but manufactured them in response to Plaintiff's complaint. Such inferences would be reasonable and thus summary judgment is inappropriate on this claim.

### B. ADA Retaliation

Plaintiff also brings a retaliation claim under the ADA. "In order to avoid summary judgment on an ADA retaliation claim, a plaintiff must establish a prima facie case of (1) engagement in an activity protected by the ADA, (2) an adverse employment action, and (3) a causal connection between the protected act and the adverse action." *DeBlanc v. St. Tammany Par. Sch. Bd.*, 640 F. App'x 308, 312 (5th Cir. 2016) (cleaned up).

Plaintiff does not establish a prima facie case. She does not clearly state what ADA-protected activity she engaged in. *See* ECF No. 23 at 21–26. She complained to Moody, but that complaint was of pregnancy discrimination, not disability discrimination. ECF No. 23 at 22. She requested accommodations for her high-risk pregnancy, but she does not allege that she was terminated because of those requests—she argues that she was terminated because she was pregnant. *See* ECF No. 23 at 21–26. Defendant is entitled to summary judgment on this claim.

11

**V. Hostile Work Environment**

Defendant lastly moves for summary judgment on Plaintiff's Title VII hostile-work-environment claim. To establish a prima facie case, Plaintiff must raise a genuine factual dispute that (1) she belongs to a protected class; (2) she was harassed because of a protected characteristic; (3) the harassment affected the conditions of employment; and (4) Defendant should have known of the harassment but failed to take remedial action. *See Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002).

To establish that she was harassed because she was pregnant, Plaintiff points to the following:

(1) Teigen's attitude "became extremely negative after the pregnancy announcement";

(2) Plaintiff faced "constant questioning" related to her attendance and productivity;

(3) Defendant put Plaintiff on a PIP;

(4) Plaintiff "was called out and embarrassed in front of her coworkers"; and

(5) Teigen told Plaintiff that she had to remain at her desk.

ECF No. 23 at 27.

This conduct does not raise a fact issue on a Title VII harassment claim. "Harassment must be sufficiently severe or pervasive so as to alter the conditions of employment and create an abusive working environment." *Standley v. Rogers*, 202 F. Supp. 3d 655, 674 (W.D. Tex. 2016), *aff'd*, 680 F. App'x 326 (5th Cir. 2017) (cleaned up). Even though Plaintiff claims that Teigen's attitude was "extremely negative," she is unable to cite more than stray comments to support the claim. *See id.* (holding that "vague" and "unspecific" allegations "would not serve as hallmarks of a hostile work environment or serve as evidence of harassment"); *Ramsey*, 286 F.3d at 269–70

12

(concluding that "vague assertions of racial animus"  and "sporadic allegations of race discrimination cannot be the basis of a Title VII claim"). This does not establish an abusive working environment. Similarly, all managers provide productivity supervision and plans to improve performance. And all employees at Plaintiff's workplace were instructed to remain at their desks, so Plaintiff cannot reasonably assert that this instruction targeted her as a pregnant woman.

Accordingly, there is no genuine dispute that Plaintiff was subject to harassment that unreasonably interfered with her work performance.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 21) is **GRANTED IN PART** and **DENIED IN PART**.

The following claims are **DISMISSED**:

(1) pregnancy discrimination under Title VII, the PDA, and the Texas Labor Code;

(2) disability discrimination under the ADA;

(3) retaliation under the ADA;

(4) failure-to-accommodate discrimination under the ADA; and

(5) hostile-work-environment harassment under Title VII.

This case will proceed to trial on the following claims:

(1) failure-to-accommodate discrimination under the Pregnant Workers Fairness Act; and

(2) retaliation under Title VII, the PDA, and the Texas Labor Code.

It is so **ORDERED**.

**SIGNED** this July 13, 2026.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE